UTICA TRUST AND DEPOSIT COMPANY and Another, Respondents, *v.* JOHN M. SUTTON, Appellant.

Fourth Department, November 26, 1930.

*John M. Sutton,* appellant in person.

*James D. Judson,* of counsel, for the respondent Utica Trust and Deposit Company.

*Edward M. Brown,* of counsel, for the respondent Utica National Bank and Trust Company.

TAYLOR, J. The action is founded upon a written syndicate agreement, executed August 4, 1925 (hereinafter called the " Agreement "). It recites that Mitchell Small, Charles R. Pierce and Richard U. Sherman have individually contracted to purchase a " Summers tract " of land in Florida, consisting of about 27,000 acres and have paid $20,000 on the purchase price. The agreement was signed by Small, Pierce and Sherman as first parties, and as second parties by subscribers who agreed to contribute moneys to be used in purchasing the tract. The agreement further provides that Small, Pierce and Sherman, the " Syndicate Managers," are to acquire the land for the syndicate at $35 per acre and that of the

total purchase price ($945,000) one-third (or $315,000) is to be paid September 1, 1925, and the balance secured by a purchase-money mortgage. The agreement further recites in substance that if the total amounts subscribed shall equal $325,000 (which includes some "profit" for the managers), each subscriber shall be liable for the full amount of his subscription; that on or before August 20, 1925, twenty per cent of each subscription shall be payable without a call and that thereafter calls for additional payments of not more than twenty per cent per month may be made upon thirty days' written notice. This defendant subscribed and agreed to pay $20,000, and before August 20, 1925, paid $4,000, the first stipulated twenty per cent.

August 25, 1925, the managers borrowed $100,000 from each of the plaintiffs and executed and delivered as security for the loan their individual demand promissory notes. They also assigned to plaintiffs as collateral security the agreement and all moneys due and to grow due under it. This action was brought against defendant to enforce payment of the balance of his subscription ($16,000), with interest, under a complaint which alleges generally the material facts mentioned — that each of the $100,000 notes is due and unpaid to an amount of more than $58,000, although payment has been demanded; that the moneys borrowed from plaintiffs by the managers "were used by said Syndicate Managers for the purposes of said Syndicate and pursuant to the terms and provisions of said Syndicate Agreement, Exhibit ' A,' and that said Syndicate Managers have in all respects complied with the terms and conditions and performed all of the covenants and agreements upon their part to be performed under said Syndicate Agreement;" that defendant's subscription is due in full pursuant to calls duly made under the agreement and that the balance of $16,000 is unpaid. This appeal is from an order denying a motion to dismiss the complaint on the ground that it does not state a cause of action, in that it does not contain essential allegations of fulfillment of conditions precedent.

The agreement in terms confers upon the syndicate managers " general power or discretion " and extensive authority; but always, impliedly and expressly, with reference to " all things proper, necessary or expedient   *   *   *   to carry out the purposes of this agreement." Specific authority is given to the managers to mortgage the property and pledge syndicate securities as security for moneys thus obtained. This right could be exercised, of course, only after the managers had obtained title, and since the syndicate managers were obligated to make a $315,000 down payment September 1, 1925, as specified in the agreement, and could collect

from subscribers no more than twenty per cent of that amount ($63,000) before that date, the managers were required, under the general scheme of the agreement, to obtain from some source — by borrowing as they did, or otherwise — over $250,000. We do not react favorably to appellant's criticism of this method of obtaining funds, but we find validity in appellant's complaint of the failure of respondents to advise him in their pleading as to the disposition made by their assignors of funds previously obtained by them and the general handling of syndicate business.

Under the agreement the managers are to " take over said contract from said Small, Pierce and Sherman and to purchase said Summers Tract for such syndicate  *  *  *;  the funds so secured [by subscription] shall be applied, used and disbursed by the syndicate managers for the purposes above set forth and for such other purposes as may become necessary in carrying out the syndicate plans. The said syndicate managers agree to proceed to purchase said property at said price and upon such terms of payment as shall, in their judgment, be the best obtainable in the circumstances."

The provisions of the agreement just quoted import mutuality of obligation. They constitute a condition, a covenant, that all moneys collected from subscribers and all moneys raised in and about furthering the project covered by the agreement will be used — and duly and promptly used — in the purchase of the Summers tract of land or in its conservation or otherwise in carrying out the transaction upon which alone the agreement is based, and not otherwise. That idea is implicit in the contract, taken in its entirety. The position and the rights and obligations of this defendant must be estimated and defined in the light of the particular facts involved. Defendant's contract is to furnish funds from time to time as they are needed, up to a certain amount, and in conjunction with other persons similarly situated. These funds are to be used for a specific purpose, not necessarily all at one time, but as and when they should be " applied, used and disbursed " under and in accordance with the terms of a written agreement between the subscribers and the persons who are to receive and disburse the funds. At any time when defendant is called upon to furnish additional funds — he having already made a due payment under his contract — equity and justice required that he be not compelled to do so before he has been authoritatively advised as to (1) whether or not the managers have purchased the tract; (2) the terms of the contract of purchase actually entered into, including specifications as to times and amounts of payments to be made; (3) the times, purposes and

amounts of disbursements previously made by the managers, and (4) as to the general status and progress of the venture. Such assurance is a condition precedent to the successful prosecution of an action to compel additional payments. To hold contra would require defendant to pay under the risk of being compelled later to resort to a law suit, perhaps unsuccessfully, to recover back money unjustly demanded and improvidently paid.

Under the construction of the agreement, if there had been no assignment to these plaintiffs and suit had been brought by the syndicate managers themselves to enforce subscription payment in full, the syndicate managers would have been required in fairness to plead their fulfillment of existing conditions precedent relating to the handling of funds which they had received, and generally as to the syndicate business. The assigned agreement gave notice to these plaintiffs of all obligations resting upon their assignors. It is a non-negotiable instrument, and plaintiffs have no greater rights under it than their assignors had, whether or not plaintiffs were purchasers in good faith. (*Jermyn* v. *Searing,* 170 App. Div. 707, 724; affd., 225 N. Y. 525; *Stevenson Brewing Co.* v. *Iba,* 155 id. 224.) Therefore, allegations of fulfillment of conditions precedent, as above indicated, were essentials of this complaint. Such allegations are lacking. The quoted portions of the complaint which are claimed to meet this obligation present conclusions of law. They do not " state the facts constituting performance " of conditions precedent, and there is no allegation that plaintiffs' assignors have " duly performed all the conditions of such contract on [their] part." (Rules Civ. Prac. rule 92.) Strict compliance with this rule is necessary. (*Berger* v. *Urban Motion Picture Industries, Inc.,* 206 App. Div. 379.)

The complaint does not state a cause of action for the reasons given, and the order appealed from should be reversed on the law, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs; plaintiffs to have leave, however, to plead over within twenty days upon payment of the costs of the motion and of this appeal.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Order reversed on the law, with ten dollars costs and disbursements, and motion to dismiss complaint granted, with ten dollars costs, with leave to plaintiffs to plead over within twenty days upon payment of costs of the motion and of this appeal.